IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOSE ARGENY PORTILLO-ARGUETA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | 1:25-cv-2285 (AJT-WEF) |
| JOSEPH SIMON, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Jose Argeny Portillo-Argueta's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody that began on August 19, 2025 on the grounds that his ongoing detention at Farmville Detention Center violates the Immigration and Nationality Act (the "INA") and his constitutional due process rights. Upon consideration of the Petition, the memoranda in support thereof and in opposition thereto, and for the reasons stated below, the Petition is GRANTED.

**I.    BACKGROUND[1]**

Petitioner is a native and citizen of Honduras who entered the United States without inspection around May 2013. [Doc. No. 1] ¶¶ 1, 3. On May 9, 2013, shortly after Petitioner entered the United States, Customs and Border Patrol officers encountered Petitioner, detained him, and served him with a Form I-860, Notice of Order of Expedited Removal pursuant to 8 U.S.C. §

---

[1] Many of the facts the Court relies upon are from the declaration of James A. Mullan, Supervisory Detention and Deportation Officer. Doc. No. 4-1. In his declaration, Mr. Mullan attests to "the facts and circumstances regarding Petitioner's immigration proceedings and custody status" based on, among other things, his "review of information contained in Petitioner's files, records and databases maintained by ICE." *Id.* at ¶ 4. Critically, however, Respondents do not attach to their opposition any of the records Mr. Mullan reviewed.

1225(b)(1)(A). [Doc. No. 4-1] ¶ 6. Before Petitioner was removed, he expressed a fear of returning to his country and was referred to USCIS for a Credible Fear Interview under 8 U.S.C. § 1225(b)(1)(A)(ii). *Id.* ¶ 7. The asylum officer determined that Petitioner had a credible fear of returning to Honduras and Petitioner was subsequently issued a Notice to Appear ("NTA") and charged with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as a noncitizen who, at the time of application for admission to the United States was not in possession of any valid entry document, and was placed into removal proceedings pursuant to 8 U.S.C. § 1229. *Id.* ¶ 8. In July 2013, Petitioner was released on bond in accordance with DHS's then adopted practice as reflected in *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005).[2] *Id.* ¶ 9.

On February 14, 2019, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with the Immigration Court, but after an immigration judge held a competency hearing and found the Petitioner to be incompetent, the IJ in 2023 administratively closed Petitioner's removal proceedings in Sterling Immigration Court. *Id.* ¶¶ 11–13. On July 9, 2025, DHS filed a Motion to Recalendar Petitioner's removal proceedings with the Sterling Immigration Court, which an Immigration Judge granted on July 20, 2025. *Id.* ¶¶ 15–17.

On or about August 19, 2025,[3] ICE agents arrested Petitioner and took him to Farmville Detention Center, where he remains detained.[4] [Doc. No. 1] ¶ 50. On September 11, 2025,

---

[2] In *Matter of X-K-*, 23 I. & N. Dec. 731 (BIA 2005), the Board of Immigration Appeals ("BIA") held that noncitizens who were transferred from expedited removal proceedings to full removal proceedings after demonstrating a credible fear of persecution could be eligible for release on bond, a holding it later reversed in 2019 in *Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019), in which it concluded that noncitizens transferred from expedited removal proceedings to full removal proceedings after demonstrating a credible fear are ineligible for release on bond and must be detained pending removal proceedings, unless they can demonstrate eligibility for release on humanitarian parole.
[3] Respondents contend that Petitioner was detained on July 17, 2025. [Doc. No. 4-1] ¶ 14.
[4] Petitioner's arrest followed the dismissal of public intoxication and drug possession charges in Roanoke General District Court.

Petitioner appeared for a master calendar hearing and an Immigration Judge found Petitioner to be competent. [Doc. No. 4-1] ¶ 18. Petitioner had scheduled a bond redetermination hearing before an Immigration Judge on December 9, 2025, but submits it would have been futile in light of the Board of Immigration Appeals ("BIA")'s decision in *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Id.* ¶ 53. Based on the record, Petitioner has no criminal record, and since his arrival in the United States, has remained consistently employed and paid taxes. *Id.* ¶ 52.[5] Petitioner currently lives in Virginia with his sister and is the father of two U.S. citizen children. *Id.* ¶¶ 49, 52.

## II.   LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

## III.   DISCUSSION

As an initial matter, Respondents contend that this Court lacks jurisdiction to review Petitioner's claims under 8 U.S.C. § 1252(a)(2)(A)(iv), which provides the following:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such

---

[5] Petitioner submits that even though his asylum application was administratively closed, "he was granted employment authorization," [Doc. No. 1] ¶ 52, which Respondents do not contest, though neither party has submitted any proof of or details surrounding Petitioner's employment authorization.

3

> title, no court shall have jurisdiction to review . . . (iv) *procedures and policies* adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

*Id.* § 1252(a)(2)(A)(iv) (emphasis added). Respondents submit that Petitioner's request amounts to a review of the procedures and policies adopted by the BIA because he challenges his eligibility to receive bond under the BIA's decision in *Matter of M-S-*, 27 I. & N. Dec. 509 (A.G. 2019), which concluded that individuals initially detained under § 1225(b)(1) who establish credible fear are not entitled to release on bond. [Doc. No. 4] at 7–8. The Court concludes that § 1252(a)(2)(A)(iv) does not deprive it of jurisdiction since "Petitioner does not challenge the procedures or policies through which DHS implements expedited removal under 8 U.S.C. § 1225(b)(1)," and instead "challenges whether he is subject to those policies in the first place and whether his continued detention, after an IJ ordered his release on bond, violates his right to due process." *Luna Sanchez v. Bondi*, No. 1:25-CV-018888-MSN-IDD, 2025 WL 3191922, at *3 (E.D. Va. Nov. 14, 2025).

The central question is whether Petitioner is subject to mandatory detention pending the outcome of his pending asylum application or entitled to continued release under the bond issued in July 2013.

Section 1225(a) provides that "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). As previously recognized by this Court, "[a]pplicants for admission are either covered by Section 1225(b)(1) or 1225(b)(2)." *Luna Quispe v. Crawford*, No. 1:25-CV-1471-AJT-LRV, 2025 WL 2783799, at *4 (E.D. Va. Sept. 29, 2025). Section 1225(b)(1), which is at issue here, applies to noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," *Jennings v.*

4

*Rodriguez*, 583 U.S. 281, 287 (2018), as well as to other noncitizens who receive special designation by the Attorney General. 8 U.S.C. § 1225(b)(1)(A)(iii). Applicants for admission covered by § 1225(b)(1) are subject to mandatory detention throughout removal proceedings and are removed "without further hearing or review" pursuant to an expedited removal process unless the person "indicates either an intention to apply for asylum . . . or a fear of persecution," in which case that person is referred for an asylum interview. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). "[I]f the interviewing asylum officer [subsequently] . . . concludes that the [noncitizen] possesses a credible fear of persecution or torture, the [noncitizen] is referred for non-expedited removal proceedings under 8 U.S.C. § 1229a, 'during which time the [noncitizen] may file an application for asylum and withholding of removal.'" *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 426 n.4 (3d Cir. 2016) (quoting 8 C.F.R. § 1208.30(g)(2)(iv)(B)). The statute provides that "the [noncitizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Section 1225(b)(1)(B)(ii) is silent as to the required treatment of a non-citizen such as the Petitioner who has obtained a favorable credible fear determination but (until recently) did not have pending an application for asylum. However, § 1225(b)(1)(B)(iii)(IV), titled Mandatory Detention provides that "[a]ny [noncitizen] subject to the procedures under this clause [§ 1225(b)(1)(B)(iii), titled Removal without further review if no credible fear of persecution] shall be detained pending a final determination of credible fear of persecution and if found, not to have such a fear, until removal." *Id.* § 1225(b)(1)(B)(iii)(IV).

By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already present in the United States," *Jennings*, 583 U.S. at 303, under which the Attorney General may "continue to detain the arrested [noncitizen]," "release the [noncitizen] on bond of at least $1,500," or "release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a)(1)-(2). Unlike §

5

1225(b)(1)(B)(ii), noncitizens who fall under § 1226(a) are not subject to mandatory detention.

Respondents contend that Petitioner continues to be subject to mandatory detention under 8 U.S.C. § 1225(b)(1), rather than discretionary detention under § 1226(a) because Petitioner was initially processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1)(A) when border patrol officers apprehended him in 2013, and he now has an asylum application pending. Petitioner claims that notwithstanding his initial detention under § 1225(b)(1)(B)(ii), his release on bond was effectively under  8 U.S.C. § 1226(a) and his asylum application filed six years later did not authorize his mandatory detention pending the outcome of that application under § 1225(b)(1)(B)(ii) or the revocation of his bond.

As noted above, Petitioner was initially (in May 2013) processed for expedited removal pursuant to 8 U.S.C. § 1225(b)(1), but subsequently (in July 2013) placed in standard removal proceedings pursuant to 8 U.S.C. § 1229a after an asylum officer determined he had a credible fear of returning to Honduras.  *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 235.6(a)(1)(i); *Castro*, 835 F.3d at 426 n.4 (after asylum officer determines noncitizen possesses a credible fear of persecution or torture, the noncitizen is referred for non-expedited removal proceedings). At that time, the BIA reasonably understood that under these circumstances a non-citizen in Petitioner's situation was entitled to a bond hearing under Section 1226(a). *See Matter of X-K-*, 23 I. & N. Dec. 731, 734–36 (BIA 2005) (concluding that IJs may exercise their "general custody authority" under § 1226(a) and release individuals on bond who are initially screened for expedited removal but subsequently establish a credible fear of persecution) *overruled by Matter of M-S-*, 27 I. & N. Dec. 509 (BIA 2019).  In July 2013, the Petitioner received that bond hearing pursuant to Section 1226(a) and was released on bond. [Doc. No. 4-1] ¶¶ 8–9. Almost six years later, on February 14, 2019, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with

6

the Immigration Court, which was administratively closed on January 4, 2023, after an Immigration Judge found Petitioner to be incompetent, and reopened on July 20, 2025, at DHS' request.

Respondents' expansive interpretation of § 1225(b)(1), under which Petitioner was required to be mandatorily detained after demonstrating credible fear of returning to Honduras and having been released on bond, all based on an asylum application filed years after his release on bond, and after the government initiated non-expedited removal proceedings, is difficult to reconcile with the plain language of 8 U.S.C. § 1225(b)(1)(B)(ii)'s mandatory detention provision.[6] As another Court has recognized, "§ 1225(b)(1) only mandates detention of noncitizens arriving in the United States during the pendency of expedited removal proceedings and the credible fear interview and review process." *See Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 69 n.7 (D.N.H. 2025) ("To the extent *M-S-* can be read to interpret § 1225(b)(1)(B)(ii) as requiring the detention of noncitizens transferred from expedited to full removal proceedings even when the asylum officer finds at the time of the interview that the noncitizen lacks a credible fear, the court finds that *M-S-* misconstrues § 1225(b)(1)(B)(ii)'s plain language and is not persuasive."). Similarly, this Court and others around the country have recognized that "Petitioner's prior release on bond carries legal significance," and DHS's decision to release an individual on bond, as opposed to humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), constitutes strong evidence that DHS intended to detain the individual under § 1226(a) and not under § 1225(b)." *Luna Sanchez*, 2025 WL 3191922, at *4; *see also Loja v. FCI Berlin, Warden*, 1:25-cv-386, 2025 WL 3079160, at *2 (D. N.H. Nov. 4, 2025) (observing that,

---

[6] Respondents also rely on 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), but that mandatory detention provision is clearly inapplicable since it only applies where an "officer determines that a [noncitizen] does *not* have a credible fear of persecution," 8 U.S.C. § 1225(b)(1)(B)(iii)(I) (emphasis added), which was not the case here.

when the government elects to release a person on bond under § 1226(a), rather than humanitarian parole under § 1182(d)(5)(A), the government cannot later "turn back the clock, and neither can the Court").[7]

Having concluded that Petitioner is detained pursuant to § 1226(a), the Court must next consider whether his continued detention without bond—after having been previously granted release on bond—is lawful. Although DHS "may revoke a bond or parole authorized under [§ 1226(a)], U.S.C. § 1226(b), the government must demonstrate a "change of circumstance" to revoke a previous bond determination made by an immigration judge. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)); *see also Luna Sanchez*, 2025 WL 3191922, at *4. Here, the record reflects that ICE detained Petitioner simply because officers "encountered" him and "determined [that] Petitioner was present in the United States without being admitted or paroled," and took him into civil immigration custody, [Doc. No. 4-1] ¶ 14, but otherwise demonstrates no change in circumstances that could justify the revocation of Petitioner's bond.

As this Court has previously recognized, governmental detention violates substantive due process "unless the detention is ordered in a criminal proceeding with adequate procedural protections or, in certain special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Luna Quispe*, 2025 WL 2783799, at *7. Likewise, the Court concludes, as it did in *Luna*

---

[7] Although Petitioner would not have been eligible for release on bond in 2013 under the holding of *Matter of M-S*, 27 I. & N. Dec. 509, 518–519 (BIA 2019), Petitioner here *was* released on bond pursuant to the BIA's then applicable authority, *Matter of X-K-*, 23 I. & N. Dec. 731, 734–36 (BIA 2005). Given the Court's conclusion that mandatory detention under § 1225(b)(1) is not authorized under the facts of this case, the Court does not need to assess the application of *Matter of M-S*.

*Quispe*, that Petitioner's continued detention violates his right to procedural due process. Petitioner's interest at stake is his bodily freedom, the "most elemental of liberty interests," *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004), which lies at "the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The risk of erroneous deprivation is substantial, particularly in light of Petitioner's prior release on bond. *Luna Quispe*, 2025 WL 2783799 at *7. And the Court finds that any governmental interest in detaining Petitioner without bond is minor when weighed against Petitioner's substantial liberty interest. *Id.*

Because Petitioner's continued detention violates his right to due process, he is entitled to immediate release. *See, e.g., Luna Sanchez*, 2025 WL 3191922, at *5 (ordering release of petitioner previously released on bond who was redetained without justification).

### IV.   CONCLUSION

For the reasons stated above, the Petition is GRANTED and it is hereby

**ORDERED** that Petitioner be released immediately from custody subject to the bond that was set in July of 2013; and it is further

**ORDERED** that Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless he has committed a new violation of any federal, state, or local law; has failed to attend any properly noticed immigration or court hearing; or has received a final order of removal; and it is further

9

**ORDERED** that Respondents file within three days a status report with this Court confirming Petitioner's release.

The Clerk is directed to send copies of this Order to all counsel of record.

Alexandria, Virginia
January 23, 2026

/s/
Anthony J. Trenga
United States District Judge